# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BARRY JOSEPH CENAC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 11-1492-KDE-SS** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

The plaintiff, Barry Joseph Cenac ("Cenac"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits and a period of disability under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, as well as his claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

## PROCEDURAL HISTORY

On March 13, 2009, Cenac completed applications for benefits asserting that he became unable to work on October 12, 2008. R. 113-119. He reported: (1) a fracture at T11; (2) a bulging disc at L5; (3) a pinched nerve in the left leg; (4) arthritis in his back; and (5) a numb sore left leg with muscle spasms. R. 142. On April 17, 2009, the applications were denied. R. 60-63. There were hearings before an Administrative Law Judge ("ALJ") on December 9, 2009 and June 28, 2010. R. 23 and 32. On August 23, 2010, the ALJ issued an unfavorable ruling. R. 10-19. On June 10, 2011, the Appeals Council denied Cenac's request for review. R. 1-3. On June 23, 2011, he filed a complaint in federal court. Rec. doc. 1. On November 16, 2011, he filed his motion for

summary judgment. On November 23, 2011, he filed a supplemental memorandum. Rec. doc. 13.

On January 1, 2012, the Commissioner filed a cross-motion for summary judgment. Rec. doc. 15.

Cenac is represented by counsel.

## STATEMENT OF ISSUES ON APPEAL

Issue no. 1.    Whether substantial evidence supports the ALJ's conclusion that Cenac did not satisfy a listing?

Issue no.2.    Whether the ALJ properly weighed the medical opinion evidence?

Issue no. 3.    Whether substantial evidence supports the ALJ's RFC[1] assessment?

Issue no. 4.    Whether the ALJ properly evaluated Cenac's credibility?

Issue no. 5.    Whether Cenac's new evidence should be considered, and if so, whether it warrants the relief sought by Cenac?

## THE COMMISSIONER'S FINDINGS RELEVANT TO THE ISSUE ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1.    Cenac met the insured status requirements of the Social Security Act through December 31, 2012.

2.    Cenac had not engaged in substantial gainful activity since October 12, 2008, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.    Cenac had the following severe impairments: disorders of the back and right rotator cuff tendonitis (20 CFR 404.1520(c) and Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985)).

4.    Cenac did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After consideration of the entire record, the ALJ found that Cenac had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that Cenac could sit and walk for forty-five minutes at one time without interruption. He could sit for eight hours total in an eight-hour workday; and stand and walk for a total of two hours out

---

[1]  Residual Functional Capacity.

of an eight-hour workday. In reference to the sitting, standing, and walking activities, Cenac had to alternate the positions periodically at will. Cenac should not repetitively navigate stairs or engage in repetitive stooping, crouching, crawling, bending, kneeling, or squatting. He should avoid repetitive or prolonged overhead activities involving the right upper extremity. Cenac could never push or pull with the right upper extremity. He had a slight to moderate reduced ability to maintain attention and concentration for extended periods; and a slight to moderate reduced ability to complete work tasks at a consistent pace in a normal workday. The use of "moderate" as a term is defined as an adverse impact on the ability to perform at optimum level of performance up to one third of the workday, but at no time would it preclude work altogether.

6.      Cenac was unable to perform any past relevant work (20 CFR 404.1565).

7.      Cenac was born in 1959 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Cenac subsequently, at the hearing, changed age category to closely approaching advanced age (20 CFR 404.1563).

8.      Cenac has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Cenac has acquired work skills from past relevant work (20 CFR 404.1568).

10.     Considering Cenac's age, education, work experience, and residual functional capacity, he has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

11.     Cenac has not been under a disability, as defined in the Social Security Act, from October 12, 2008, through the date of this decision (20 CFR 404.1520(g)).

R. 12-19.

## ANALYSIS

a.      **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is

substantial evidence in the record to support the final decision of the Commissioner as trier of fact

and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.

Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir.

2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process

for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[2]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry.  Id.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing.  Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective

---

[2]  The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520©, 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

medical evidence of pain and disability; and (4) the claimant's age, education, and work history."
Perez v. Barnhart, 415 F.3d at 462. "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

b. **Testimony at the Hearing.**

Cenac was 50 at the time of the December 9, 2009 hearing. R. 26. He had completed high school. R. 26. He could read, write, add and subtract. R. 27. He was being treated by Dr. Cenac, who was his third cousin. R. 27. Dr. Cenac began treating him in 1981 when he was first injured. R. 27. Dr. Cenac performed surgery in 1981, and he was released to return to work. R. 27. He was injured a second time in 2002. R. 28. Dr. Cenac performed surgery for a ruptured disc in the lumbar region. R. 28. In 2008, a tree fell on him and his backbone was broken, two ribs were fractured, and his lungs collapsed. R. 28.

The ALJ reported that Cenac would be sent out for a consultative orthopedic examination with a request for a residual functional capacity evaluation. R. 29-32.

On June 8, 2010, the hearing resumed. Cenac was 51. R. 34. From 1993 into 1996 he drove tractor trailer trucks. R. 36. In 1996, he worked as a machinist. R. 36. From 1996 through 1998, he worked in his father's business as a shop hand in a trailer park. R. 36. His next job was as a shop foreman for a firm that sold and serviced fuel pumps. R. 37.

Cenac reported that since the December 9 hearing his condition had become worse. R. 38. He saw Dr. Cenac every six weeks. R. 38. He could stand for 30 to 45 minutes. R. 39. He could not sit for more than 15 to 20 minutes before he had to get up and move. R. 39. He walked every morning for about 25 minutes. R. 39. He could pick up 10 to 15 pounds. R. 39. He had limited movement in his right shoulder. He could not pick up things in his right hand. He could not lift his

right arm over his shoulder.  R. 40-41.  He could not pull things with his right arm.  R. 41.  He experienced pain in his ribs, his lower back and left leg.  R. 41.  His whole left leg became numb. R. 41.  He did not have any feeling in his left leg.  R. 41.  He favored his left leg when he walked. R. 42.  After going to a wedding and dancing, he could not move around for three to four days.  R. 40.

In a normal day, it took him about an hour to get moving.  He walked every morning for 25 minutes in accord with his doctor's instructions.  He watched soap operas for two hours.  He did some house cleaning.  R. 40.  He drove a pick-up truck.  He could not ride for more than an hour before he had to get out and stretch.  R. 42.

Cenac's pain medication gave him relief from pain.  R. 43.  He had trouble with his memory when he was on the pain medication.  R. 43.  He also took muscle relaxers.  R. 44.

The ALJ limited his questions to sedentary positions.  R. 50.  The vocational expert testified that Cenac had some transferrable skills.  R. 51.  With these skills there were sedentary jobs which he could perform.  R. 52.  The ALJ defined the term "moderate" to mean that it would have an adverse impact on the ability to perform at optimum level of performance for up to one-third of the work day, but at no time would it preclude work altogether.  R. 54.  The vocational expert testified that moderate limitations in the ability to maintain attention and concentrate for extended periods and the ability to complete work tasks in a normal day at a consistent pace would not have an effect on his ability to perform semi-skilled sedentary jobs.  If the limitations were marked, it would preclude all work.  R. 54.

c.    **Medical Evidence**.

On October 12, 2008, a large tree limb fell on Cenac and struck his shoulder.  He went to the

emergency room at University Hospital in Jackson, Mississippi. R. 230. He was discharged on

October 15, 2008. R. 228. The diagnosis was: (1) T11 compression fracture; (2) right rib fracture

no. 3 and 4; and (3) bilateral pulmonary contusions. The hospital course was described as follows:

> Mr. Cenac was admitted to the floor after thorough evaluation in ER, in stable
> condition. While on the floor, he progressed well. Orthopedic surgery was
> consulted and the patient was then fitted with a TLSO (bodyjacket). The patient
> was seen by physical therapy and occupational therapy while on the floor. The patient
> was ambulating with some assistance, was tolerating a regular diet, and his pain
> control on Percocet. On hospital day #3 the patient had progressed well and had
> reached maximum benefit of hospital stay. . . . [T]he patient was discharged to home
> with followup by his home orthopedic surgeon.

R. 228. A lumbar scan did not reveal any acute lumbar spine abnormality. There was foraminal

narrowing at L5-S1. R. 287. A thorax scan found right posterior third and fourth rib fractures,

fracture of the anterior, associated pneumothorax (collapsed lung), and middle columns of T11 with

mild loss of vertebral body height. R. 289-91. A radiological examination of the right shoulder did

not reveal any significant abnormality. R. 254. A radiological examination of the chest found the

lung fields clear and a fracture of the right third rib. R. 256. Other scans found mild degenerative

changes of the lumbar and thoracic spine. R. 261-62.

On October 21, 2008, Cenac was seen by Christopher E. Cenac, Sr., M.D., an orthopedist.

R. 282-84. There are notes indicating that Cenac was seen by Dr. Cenac, Sr. on November 4,

November 18 and December 16 of 2008 and January 13 of 2009. R. 276.

On February 10, 2009, MRIs of the lumbar and thoracic spine were done at the request of

Dr. Cenac, Sr. The impression from a lumbar MRI was a protruded disc herniation at L4-5

compressing the left L5 root, post-surgical changes at L5-S1 with no evidence of recurrent disc

herniation, mild narrowing at L5-S1, and remote compression fracture of T11. R. 266. The thoracic

MRI revealed mild spondylosis throughout the thoracic spine with no evidence of significant

compromise of the spinal canal or the neural foramen and remote compression fracture of T11. R. 281. On February 18, 2009, Cenac was seen by Christopher E. Cenac, Jr., M.D., an orthopedist, on a referral from Dr. Cenac, Sr. The diagnosis was L4-L5 spinal stenosis and T11 compression fracture. He recommended continued lumbar orthosis and medication. R. 277. Cenac reported some chronic low back pain in his central lumbar spine, occasional left leg numbness related to activity, and complaints of left leg pain with light activity. R. 272. Dr. Cenac, Jr. described him as minimally symptomatic as he did light activity and wore an orthosis. R. 271.

There are notes indicating that Cenac was seen by Dr. Cenac, Sr. on February 16, March 19 and April 20, 2009. R. 323. On April 28, 2009, there was an MRI of the thoracic spine. The impression was a T11 compression fracture with mild anterior impingement on the thecal sac at the level of the superior end plate of T11. No other fracture or spinal canal impingement was observed. R. 305. A whole body scan identified the T11 compression fracture. It also noted probable post traumatic changes at the right eighth costovertebral junction. R. 301. Cenac was seen by Dr. Cenac Sr. on May 4, 2009. R. 323.

On May 6, 2009, Dr. Cenac, Sr. completed a questionnaire in which he indicated that Cenac could: (1) stand at one time for 15 to 20 minutes; (2) sit at one time for 30 to 60 minutes; (3) lift 5 to 10 pounds on an occasional basis and none frequently; and (4) never bend or stoop. He indicated that he could not work at all. R. 302.

Cenac was seen by Dr. Cenac Sr. on June 8, July 8, August 10, September 22 and October 7 of 2009 and on March 2, March 10, April 13, May 25 and June 14 of 2010. R. 321-23.

On March 10, 2010, Cenac was seen by Camalyn W. Gaines, M.D., an internist, for a consultative examination. Dr. Gaines reported evidence of: (1) chronic left lumbar radiculopathy

involving the L3, L5 and S1 dermatomes and myotomes; (2) failed low back surgery syndrome; and (3) right rotator cuff tendonitis.  R. 312-14.  Dr. Gaines concluded that:

> Mr. Cenac can engage in standing, walking and sitting activities although he may need to alternate positions periodically.  He should not repetitively navigate stairs nor engage in repetitive stooping, crouching, crawling, bending, kneeling, or squatting.  He can lift up to 20-25 pounds but should avoid repetitive or prolonged over head activities involving the right upper extremity.

R. 314.  Dr. Gaines completed a form concerning Cenac's ability to perform work-related activities.

R. 315-320.

On June 30, 2010, Dr. Cenac, Sr. completed a letter in which he reported that "I have not recommended that the patient return to gainful employment."  R. 341.

On August 22, 2011, Cenac was seen by Andrew Todd, M.D., an orthopedist, for complaints of back pain and left leg pain.  Rec. doc. 13 (Exhibit).

d.    **Plaintiff's Appeal.**

Issue no.1.    Whether substantial evidence supports the ALJ's conclusion that Cenac did not satisfy a listing?

Cenac contends that he met all of the requirements of Listing 1.04.[3]  He cites the diagnostic

_____

[3]  Listing 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

questionnaire completed by Dr. Cenac, Sr. on May 6, 2009 (R. 302-303), where he found Cenac positive for neuro-anatomic distribution of pain and positive for the straight leg raising test. These findings are among those required for Part A of Listing 1.04.

The ALJ stated that:

> The medical evidence in the record does not establish that the claimant's impairments medically equal the severity of the impairments in Appendix 1, Subpart A, Regulations No. 4 including all sections under 1.00 Musculoskeletal System.

R. 14. The Commissioner concedes that the ALJ could have more explicitly addressed his Listing analysis, but contends that the ALJ made a thorough review of the medical evidence which rendered his conclusory statement harmless.

In Audler v. Astrue, 501 F.3d 446 (5th Cir. 2007), the Fifth Circuit held that the ALJ erred in failing to state any reason for her adverse determination at step three. Id. at 448. The Fifth Circuit described the ALJ as summarily concluding that the claimant's impairments were not severe enough to meet or medically equal one of the impairments listed in the regulations.

> The ALJ did not identify the listed impairment for which Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment. Such a bare conclusion is beyond meaningful judicial review.

Id. While the ALJ identified the listing impairments considered as all of those found in 1.00 Musculoskeletal System, the ALJ did not provide an explanation as to how he reached the conclusion. This does not end the inquiry under Audler, however. It is necessary to determine whether the error was harmless. In Audler, the claimant submitted a diagnostic questionnaire similar to the May 6, 2009 check list completed by Dr. Cenac, Sr. In Audler, there was no medical evidence

---

20 C.F.R. Part 404, Subpart P, Appendix 1 (1.04 Disorders of the Spine).

11

to contradict these findings.  Id. at 449.

In the report of the March 10, 2010 examination, Dr. Gaines observed that Cenac had a negative sitting and supine straight leg-raising test.  R. 313.  This is medical evidence contradicting the findings of Dr. Cenac, Sr. relating to Listing 1.04A.

Dr. Cenac, Sr. indicated that Cenac was positive for arachnoiditis.  In order to meet Listing 1.04B it is necessary that there be evidence of an operative note or pathology report of tissue biopsy or medically acceptable imagining confirming that Cenac has spinal arachnoiditis.  There is no such evidence, so he did not satisfy Listing 1.04B.

During the March 10, 2010 examination, Cenac told Dr. Gaines that he could walk for about thirty minutes three times a day without stopping.  R. 313.  Dr. Gaines observed that Cenac ambulated with a normal gait pattern.  R. 313.  Based on her examination findings, Dr. Gaines determined that Plaintiff could walk for 45minutes at a time, for a total of 2 hours in an 8 hour work day.  R. 316.

Dr. Gaines' examination and report are medical evidence which contradict the finding by Dr. Cenac, Sr. that Cenac was unable to ambulate effectively.  There is medical evidence contradicting the findings of Dr. Cenac Sr. relating to Listing 1.04C.

Because there is medical evidence contradicting Dr. Cenac's findings, the failure of the ALJ to state reasons for the adverse determination at step three was harmless error.  Audler, 501 F.3d at 448-49.  The medical evidence contradicting Dr. Cenac, Sr.'s finding is substantial evidence to support the ALJ's conclusion that Cenac did not meet the requirements for Listing 1.04.

Issue no.2.        Whether the ALJ properly weighed the medical opinion evidence?

Cenac raises the issue of the weight assigned to the opinions and findings of Dr. Cenac, Sr.,

in several contexts. First, he argues that at step three of the analysis the ALJ failed to present any reason for rejecting the report of May 6, 2009 by Dr. Cenac, Sr. Rec. doc. 17 at 7-8. Second, in determining Cenac's residual functional capacity, the ALJ gave great weight to the opinion of Dr. Gaines, but little weight to the opinion of Dr. Cenac, Sr. Id. at 9. Third, the ALJ gave little weight to the conclusion of Dr. Cenac, Sr. that Cenac had difficulty ambulating. Id. at 10.

In his determination of residual functional capacity, the ALJ commented on the weight assigned to the medical opinion evidence. R. 16-17. He assigned great weight to the opinions of Dr. Gaines in her report of March 10, 2010 for the consultative examination of Cenac (R. 310-320). R. 16. He accorded weight to a February 10, 2009 MRI of the lumbar spine which was done at the request of Dr. Cenac, Sr. (R. 266-67). R. 16. The ALJ accorded great weight to a report of February 18, 2009 by Dr. Cenac, Jr. (R. 271-72). R. 16. The ALJ accorded great weight to some of the responses by Dr. Cenac, Sr. to the May 6, 2009 diagnostic questionnaire; for example the need to change position more than once every two hours, but little weight to the response that Cenac was unable to ambulate effectively (R. 302-03). R. 16-17. The ALJ accorded little weight to the June 30, 2010 opinion of Dr. Cenac, Sr. that Cenac could not work.

Pursuant to SSR 96-5p, 1996 WL 374183, *5 (S.S.A.), opinions by a treating source, such as Dr. Cenac, Sr., on whether a claimant is unable to work cannot be given controlling weight because they are administrative findings reserved to the Commissioner.

Cenac testified that he walked every morning for about 25 minutes in accord with the instructions of Dr. Cenac Sr. R. 40. This raises the issue of whether Dr. Cenac, Sr.'s instruction to Cenac for a daily 25 minute walk is consistent with Dr. Cenac, Sr.'s response on the diagnostic questionnaire that Cenac could not ambulate effectively.

13

Cenac testified that when he walked he favored his left leg. R. 42. Although he suffered for it afterwards, he was able to dance at a wedding. R. 40. During the March 10, 2010 examination, Cenac told Dr. Gaines that he could walk for about thirty minutes three times a day without stopping. R. 313. Dr. Gaines observed that Cenac ambulated with a normal gait pattern. R. 313. Based on her examination findings, Dr. Gaines determined that Cenac could walk for 45minutes at a time, for a total of 2 hours in an 8 hour work day. R. 316. On May 6, 2009, Dr. Cenac, Jr. indicated that Cenac could not ambulate effectively. The medical opinion evidence and Cenac's testimony are in conflict on his ability to walk. In <u>Newton v. Apfel</u>, 209 F.3d 448 (5th Cir. 2000), the Fifth Circuit concluded that:

> Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404. 1527(d)(2).

209 F.3d at 453 (emphasis in the original). Dr. Gaines was an examining physician who provided reliable medical evidence contradicting Cenac's treating specialist, Dr. Cenac, Sr. The ALJ properly weighed the opinion medical evidence.

<u>Issue no. 3</u>.      Whether substantial evidence supports the ALJ's RFC assessment?

Pursuant to SSR 96-8p, 1996 WL 374184 (S.S.A.):

> Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

<u>Id</u>. at *2 (emphasis and italics in original; quotation marks and footnote omitted).

In the May 6, 2009 questionnaire, Dr. Cenac, Sr. indicated that Cenac: (1) suffered from moderate to severe pain, (2) could sit at one time for no more than 30 to 60 minutes; and (3) could

not work.  R. 302-303.  Based on these responses, Cenac contends that he cannot perform sustained work activities as required by SSR 96-8p.

Cenac acknowledges that the ALJ gave little weight to the May 6, 2009 opinion of Dr. Cenac, Sr., but instead gave great weight to the opinion of Dr. Gaines.  Rec. doc. 17 at 9.  Dr. Gaines' report of March 10, 2010 states that Cenac's pain was most severe in his lower back.  R. 312.  Dr. Gaines indicated that Cenac could: (1) sit for no more 45 minutes at one time without interruption; (2) stand for no more than one hour at one time without interruption; and (3) could walk for no more 45 minutes at one time without interruption.  R. 316.  Cenac contends that this demonstrates that he could not perform sustained work activities as required by SSR 96-8p.  Cenac ignores that Dr. Gaines also found that in an 8 hour work day, Cenac could sit for eight hours, stand for two hours and walk for two hours.  R. 316.  Dr. Gaines stated that Cenac "can engage in standing, walking and sitting activities although he may need to alternate positions periodically." R. 314.  The ALJ found that Cenac had:

> [T]he residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that Cenac can sit and walk for forty-five minutes at one time without interruption.  He can sit for eight hours total in an eight-hour workday; and stand and walk for a total of two hours out of an eight-hour workday.  In reference to the sitting, standing, and walking activities, Cenac has to alternate the positions periodically at will.

R. 14-15.  Dr. Gaines's opinion provides substantial evidence for the ALJ's RFC assessment.  The issue of the ALJ's decision to grant greater weight to Dr. Gaines' opinion than the opinion of Dr. Cenac, Sr. has been addressed.

In determining Cenac's RFC, the ALJ also gave weight to the February 10, 2009 MRI of the lumbar spine which was done at the request of Dr. Cenac, Sr. (R. 266-67) and a February 18, 2009 report by Dr. Cenac, Jr. (R. 271-72).  The ALJ found that the results of the MRI were consistent with

a finding that Cenac's impairments were severe. R. 16. Dr. Cenac, Jr. described Cenac as minimally symptomatic as he did light activity and he wore an orthosis. R. 271. Substantial evidence supports the ALJ's RFC assessment.

Issue no. 4.    Whether the ALJ properly evaluated Cenac's credibility?

The ALJ found that Cenac's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment. R. 16. Cenac contends that the ALJ's rejection of his testimony is not supported by substantial evidence because: (1) Dr. Cenac, Jr. stated that he would suffer from chronic pain as a result of his thoracic fracture; (2) Dr. Cenac, Sr. stated that Cenac suffered from severe pain; and (3) Dr. Gaines found that he suffered from failed back syndrome. Rec. doc. 17 at 9-10. The Commissioner contends that the ALJ properly explained why he discounted Cenac's complaints of disabling symptoms.

In SSR 96-7p, 1996 WL 374186 (S.S.A.), the Commissioner clarified when the evaluation of symptoms, including pain, under the regulations requires a finding about the credibility of a claimant's statements about pain or other symptoms. Id. at *1.[4]

_____

[4] The Ruling provides that,

1.    No . . . combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical . . . impairments that could reasonably be expected to produce the symptoms.

2.    When the existence of a medically determinable physical . . . impairments that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3.    Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's

The ALJ cited SSR 96-7p. In making his finding on Cenac's RFC, the ALJ followed step one in SSR 96-7p to concluded that Cenac's medically determinable impairments could reasonably be expected to cause the alleged symptoms.

The ALJ determined that Cenac's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment. R. 16. A finding on credibility is required by step two in SSR 96-7p.

The ALJ considered Cenac's own statements about his symptoms as required in step three of SSR 96-7p. The ALJ considered Cenac's reports of daily pain, his performance of daily activities like laundry and chores, and his attendance at a wedding where he danced. R. 16. He considered factors which aggravated the symptoms, like the excessive activity at the wedding. Cenac's use of medication for relief of pain was considered along with the side effects from the medication. R. 16. An ALJ may consider the effectiveness of treatment in the credibility analysis. Crowley v. Apfel, 197 F.3d 194, 199 (5th Cir. 1999). These are the kinds of evidence that SSR 96-7p provides that an ALJ should consider when assessing the credibility of a claimant's statements. 1996 WL 374186

statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements. . . .

4.    In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . about the symptoms. . . . An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his . . . ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

5.    It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." . . . The . . . decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186 (S.S.A.), at *1-2.

at *3 and 8.

The ALJ considered the medical evidence as required by step four of SSR 96-7p. The ALJ described the weight accorded to the opinions of Dr. Gaines, Dr. Cenac, Sr., Dr. Cenac, Jr., and the February 10, 2009 MRI of the lumbar spine. R. 16-17.

On February 18, 2009, Dr. Cenac, Jr. stated that:

> [H]e is minimally symptomatic as he does light activity and he is wearing his orthosis. . . . I have explained to him that he <u>may</u> have chronic back pain from this condition and he may have to do some therapy to strengthen himself as he has been wearing the brace for quite some time. I would also recommend the medication Lyrica. . . .

R. 271 (emphasis added). The statement that he may have chronic back pain does not undermine the ALJ's finding on credibility, particularly where Dr. Cenac, Jr. notes that he is performing light activity with the orthosis, he may need therapy to strengthen his back, and medication is recommended for pain relief.

Dr. Cenac, Sr.'s finding of moderate to severe pain is found in the diagnostic questionnaire completed on May 6, 2009. R. 302-03. The ALJ's decision to grant less weight to Dr. Cenac, Sr.'s opinion has been addressed.

Cenac also cites the diagnosis by Dr. Gaines of failed low back syndrome as demonstrating that the ALJ's finding on credibility was not supported by substantial evidence. Cenac contends that this syndrome refers to severe chronic pain following back surgery. Rec. doc. 17 at 9-10. Cenac's emphasis of this part of Dr. Gaines' diagnosis ignores her conclusion regarding the scope of Cenac's activities (R. 314) and Dr. Gaines' assessment of Cenac's ability to do work-related activities (R. 313-320). Dr. Gaines' report provides substantial evidence for the ALJ's finding on credibility.

<u>Issue no. 5.</u>     Whether Cenac's new evidence should be considered, and if so, whether it warrants the relief sought by Cenac?

At the initial hearing before the ALJ on December 9, 2009, the ALJ reported that Cenac would be sent for a consultative examination and a residual functional capacity evaluation.  R. 29. Cenac was examined by Dr. Gaines on March 10, 2010.  R. 312.  There was a further hearing before the ALJ on June 28, 2010.  R. 32.  The ALJ noted that the latest records from Dr. Cenac, Sr. were from May 2009.  Cenac was asked to update the records from Dr. Cenac, Sr.  R. 56-57.  Notes on visits through  March 2, 2010 and a June 30, 2010 letter from Dr. Cenac, Sr. were submitted.  R. 321-23 and 341. The ALJ's August 23, 2010 decision referred to the medical evidence submitted after the June 28, 2010 hearing.  R. 14.  On June 10, 2011, the Appeals Council denied the request for review.  R. 1-3.

After the Appeals Council acted and on August 22, 2011, Cenac was seen by Dr. Todd, an orthopedist, for complaints of back pain and left leg pain.  The impression was compression fracture, degenerative disc disease lumbar spine and kyphosis.  Dr. Todd stated:

> My feeling is that he has chronic residual pain in his low back due to his multilevel spinal surgeries, degenerative disc disease, and the fracture.  He has residual kyphosis that he will always have, so he will always have some level of pain.  I would suggest that he will always have some limitations as far as his back is concerned.  I think lifting restrictions of 10 to 15 pounds intermittently are reasonable.  I think walking on uneven surfaces would be difficult.  Prolonged or repetitive squatting, kneeling, twisting, bending, or climbing ladders would be difficult for him.  Certainly, carrying anything or prolonged lifting of any kind, work away from his body or overhead would be virtually impossible for him.  I think as far as treatment is concerned, he is doing everything he can with Dr. Cenac with therapy, injections, and medications and he is going to have chronic issues over the long-term.

Rec. doc. 13 (Exhibit).

In his supplemental memorandum (Rec. doc. 13), Cenac urges that Dr. Todd's report

establishes that Cenac's impairment meets the requirement for Listing 1.04 and prevents him from performing sedentary work.[5]  Cenac reports that he sought the second opinion from Dr. Todd because of the ALJ's apparent skepticism toward Dr. Cenac, Sr., who is distantly related to Cenac. The Commissioner opposes consideration of Dr. Todd's report.

Under 42 U.S.C. § 405(g) a claimant's motion to remand is to be granted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . ."[6]  The evidence must be:  (1) new and not cumulative; (2) material; and (3) good cause must be shown for the failure to incorporate such evidence into the record in a prior proceeding.  Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989), and Dorsey v. Heckler, 702 F.2d 597, 604 (5th Cir. 1983).

In Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989), the claimant sought a remand on the basis of a psychological evaluation obtained by her subsequent to the ALJ hearing.  The evidence was not in existence at the time of the administrative proceedings, so it met the requirement of "new" evidence.  The report by Dr. Todd is "new" evidence.

In Pierre v. Sullivan, 884 F.2d at 803, an I.Q. test was not administered until after the claimant filed her complaint in district court.  It was not cumulative, because there was no other objective evidence offered of claimant's intellectual ability.  Here, Dr. Todd's report is "cumulative"

---

[5]  On November 23, 2011, Cenac filed his supplemental memorandum with Dr. Todd's report.  Rec. doc. 13. The filing was marked deficient by the Clerk.  On November 28, 2011, Cenac filed a motion for leave to file supplemental memorandum.  Rec. doc. 14.  He was granted leave to file the supplemental memorandum.  Rec. doc. 16. Unfortunately, the memorandum accompanying the motion for leave to file supplemental memorandum was identical to the memorandum in support of the motion for summary judgment.  In order to include the November 23, 2011 supplemental memorandum in the record, the Clerk was instructed to remove the deficiency from the November 23, 2011 filing.

[6]  On June 9, 1980, partly in an effort to stem the growing tide of unjustified federal court ordered remands, Congress amended 42 U.S.C. § 405(g).  The relaxed "good cause" standard for remand of disability benefit cases was replaced.  Dorsey v. Heckler, 702. F.2d 597, 604 (5th Cir. 1983).

evidence, because there is other evidence from Dr. Cenac, Sr., Dr. Cenac, Jr. and Dr. Gaines on Cenac's ability to do work-related activities.

The second prong of the test for remand is materiality.

> Reviewing the materiality of new evidence requires us to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision.

Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995). Dr. Todd's report does not relate to the period for which disability was denied. There is not a reasonable probability that Dr. Todd's report would have changed the ALJ's decision. At the conclusion of the June 28, 2010 hearing, Cenac's counsel asked the ALJ why he did not believe that Cenac met Listing 1.04. R. 56. The ALJ responded that the May 6, 2009 responses by Dr. Cenac, Sr. to the diagnostic questionnaire (R. 302-03) were not consistent with the February 10, 2009 MRI (R. 266-67), whereas Dr. Gaines' RFC evaluation (R. 315-320) was consistent with the MRI. R. 55-57. Dr. Todd's report does not address the ALJ's conclusion regarding the February 10, 2009 MRI and therefore, does not satisfy the materiality requirement.

The third requirement is good cause.

> It is ... settled law of our Circuit that new evidence is not the requisite good cause for ... a remand unless a proper explanation is given of why it was not submitted earlier... The mere fact that a medical report is of recent origin in not enough to meet the good cause requirement.

Pierre, 884 F.2d at 803. Cenac does not meet the requirement for good cause. Although the ALJ issued his decision on August 23, 2010, Cenac does not explain why he waited a year to secure the second opinion from Dr. Todd.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that Commissioner's cross-motion for summary judgments (Rec. doc. 15) be GRANTED and Cenac's motion for summary judgment (Rec. doc. 12) be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 30th day of April, 2012.

**SALLY SHUSHAN**
**United States Magistrate Judge**